CONRAD MÜLLER

*v.*

CITY OF BAYONNE.

A municipal charter provided that the city clerk should keep a complete
record of all taxes and assessments, which were further declared to be a lien
on the premises covered until paid.   The appellant applied to the city clerk
for a certificate of the amount of taxes and assessments on a designated lot he
was about to buy, which was furnished him, under the seal of the city, by the
clerk, who was paid a fee therefor.   He bought the lot, and afterwards dis-

·covered that two assessments and the tax for one year had been omitted from ·the certificate.—*Held*, that the city was not responsible for the misfeasance of ·the clerk, and consequently could not be restrained from enforcing the liens.

On appeal from a decree advised by *W. B. Williams, Esq.*, advisory master, who filed the following conclusions:

The charter of Bayonne provides, amongst the city officers, for ·a city clerk, to be appointed by the board of councilmen, to give ·bond to the city in such sum as the board shall approve for the ·faithful performance of said duties (fixed by ordinance at $5,000), ·and to receive a salary fixed by the board. It prescribes, among ·his duties, that he shall have charge of all the records, books and ·documents of the city (except when the board otherwise directs), ·and that a complete record of all taxes and assessments shall be kept in his office containing the time when laid and when paid, ·and if sold, when and to whom sold, and if redeemed, when and by whom.

It is further provided, that all taxes and assessments on lands ·in said city shall be and remain a lien thereon until paid; that ·assessments for opening, extending or widening streets, when ·made and filed with the clerk, shall be a lien; that assessments ·for grading, paving, curbing, sewering &c., when made and finally corrected by commissioners, are to be filed with the clerk, ·and, on confirmation by the board, shall be a lien; and that ·damage by change of grade, when ascertained, shall also be a lien.

The term "lien" is also, in section 46, applied to tax sales, in providing for notice to mortgagees, as follows: "Nothing herein ·contained shall be so construed as to impair the lien created by such tax, assessment or sale." *P. L. of 1869 p. 391.*

Section 48, specially relied on in this suit, enacts "that it shall be the duty of the city clerk to record in a book, to be called 'Record of Sales,' all declarations of sales as aforesaid, to give ·certificates of search in relation to liens to any person or persons ·applying for the same, and to cancel such declarations when the ·property for which they were given shall be redeemed, on the ·certificate of the city treasurer of such redemption, and to file ·such certificate in said clerk's office." No fee is provided, either

by statute or ordinance, for such searches, nor is there any ordinance concerning them.

The complainant, being about to purchase lands in said city, employed an attorney to search the title, who applied to the city clerk for a certificate of search, showing what taxes or assessments were due on the premises. The city clerk thereupon gave the certificate set forth in the bill of complaint, stating that he had searched the records of his office for taxes and assessments against said premises, and did not find any uncanceled except the taxes of 1878, 1879, 1880 and 1881, and the assessment for the main sewer in Cottage and Fifth streets, stating the amounts of each. The certificate is signed by the city clerk, and the official seal of the city affixed, and the clerk charged and received $5 for it to his own use.

The complainant completed his purchase and paid the purchase-money, relying on this information, and deducting, by arrangement between him and his vendor, the amount necessary to pay the above-mentioned taxes and assessment.

Besides said taxes and assessment, there were due and appearing on record in the city clerk's office, at the time of making the said certificate, other taxes and assessments on said lands, viz.: Assessment paving Avenues D and S, $671.91; assessment for sewer in Avenue D, $433.35; tax for 1884, $98.80.

The bill prays that the lands may be freed and discharged from the lien of the said two assessments, and the city restrained from enforcing payment thereof, and for such other relief as may be proper.

The effort is here made to prevent a municipal corporation, intrusted with a part of the sovereignty of the State in respect to levying and collecting impositions under the taxing power for the expenses incident to certain of its public functions, from exercising that power. The rule of law should be clear to justify such interference, as it goes directly to the ability of the corporation to perform its duties.

The complainant's suit rests on the theory that the corporation is liable to answer for the negligence of the city clerk in making an erroneous certificate, and is estopped from acting contrary to

such certificate as against the complainant, who has relied thereon to his injury.

If this duty of furnishing certificates of search to those who apply for them can be regarded as a duty to the public, or imposed for the public benefit, like the ordinary duties of municipal corporations, the settled doctrine would be applicable that no action lies for an individual against the corporation, either for its own negligence or that of its agents or officers in respect to such public duty, unless expressly given by statute. *Condict* v. *Jersey City, 17 Vr. 157 ; Wild* v. *Paterson, 18 Vr. 406*.

It may be that this duty should be so regarded, for the corporation has no corporate interest in its performance, and derives no special profit or benefit from it, and it is to be rendered to any person who asks for it, not merely to the owner of particular premises. If it is regarded as a new function added to and forming part of the general scheme for the collection of taxes, then it would evidently be in the nature of a public duty.

But this duty seems more properly to be in the nature of a private duty owed to the individual who asks for its performance. If we then seek for the person who is made liable by the statute to perform it, we find it is the city clerk. The same law which created the corporation created also the city clerk, prescribed to him this duty, and provided for him the means of performing it, by requiring that a complete record of all taxes and assessments should be kept in his office, which requirement it is apparently beyond the power of the corporation to alter or dispense with. No supervision or control over the performance of this duty, nor reward for it is given to the corporation ; nor does the statute in terms declare any corporate liability in regard to it.

The nearest case to the present one which I have found is that of *Alcorn* v. *Philadelphia, 5 Phila. 130, 44 Pa. St. 348*, where the plaintiff sued the city for damages for negligence of one of the city surveyors elected under the statutes in surveying the plaintiff's lot.

The supreme court, in that case, said, that the selection of the officer was not by the corporation as such, but by the people in their sovereign capacity ; and that the surveyor was not directed

by the corporation to perform the service in question, but did so in pursuance of the statute; and concluded that the doctrine of *respondeat superior* was not applicable, as the relation of master and servant did not exist as to the matter in question, and continued as follows (*p. 351*): "To designate officers to make surveys for each district, and require them to keep offices where they might be found, and where the plans of the city might be seen, was a great convenience to the people; but, as they were to be called on by each individual requiring their services, they thus would become the agent of the party so employing them, and not the agent of the city in that business, and consequently liable to the party thus employing them for any negligence in the performance of their duty. What seems to me a conclusive consideration in this question is, that the city had no right to direct the surveyor to perform the work in any particular way, nor could they correct it if wrong, or correct it in any manner whatever. * * * Neither city, county nor township is required or furnished with the means to survey people's lots, or lay out their foundations for buildings or party-walls. This is not a public duty; it is private, and they are not bound by virtue of their corporate capacity to do it, and there is no statute requiring it to be done. Public law has established the office of surveyor for the performance of certain duties, and when, as in the case in hand, they are of a private nature, if, in the manner of performing them, injury ensues from negligence or unskillfulness, the party employing the officer must look to him for redress. There are many local offices, and some of them partially municipal in their functions, established for the convenience of individuals composing society, as well as society in its aggregate or corporate character; such as aldermen, justices of the peace, constables, sheriffs, county surveyors and the like; but we never heard of the district for which they are elected being held answerable for their acts or omissions. I do not find anything in ordinary municipal incorporations, and nothing in that of this city, to change this general principle of non-liability; nor in the law applicable to municipal corporations, where the relation of principal and agent does not exist in fact. Where private parties are injured by the carelessness or

16

negligence of any such functionary, the redress is had directly from the wrongdoer."

It seems impolitic to extend by implication the liability of municipal corporations for neglects by officials beyond what is declared by statute, or arises necessarily from the manifest relation of master and servant. Plainly, no such implication or responsibility arises where the city officer in charge of the records gives such a certificate without statutory authority. This was recently decided by Mr. Justice Depue, in a case arising on the charter of Newark. The case of the *City of Elizabeth* v. *Shirley, 8 Stew. Eq. 515,* rests solely upon the language of the charter, declaring that any liens omitted from the certificate given by the official shall not be enforced against purchasers in good faith.

In my judgment, the statute now under consideration merely requires the city clerk to furnish the information to parties asking it, and does not place the duty upon the corporation as such, either towards the public or the individual.

The difference between the Pennsylvania case and the present is, that in that case the officer was elected by the people, while in this he was appointed by the council, does not seem to me material. The selection of the official may be, and frequently is, reposed by law in a body which is not responsible for his acts. The nature of the duty, and how and on whom it is imposed by law, are the tests whether he stands in the particular matter in the position of servant of the corporation or not, and in this case I do not find that relation to have been created in the matter in question.

In reaching this conclusion, I am not unmindful of the argument deducible from the fact that the liens in question are for taxes due to the corporation, whose officers might, therefore, be reasonably asked to furnish correct information regarding them, and from the usages of business in selling and mortgaging lands in reliance on information obtained from city officials. But it seems to me that the implication thus arising would be reached just as easily in cases where there is no statutory provision as in this case, and that is a position which clearly cannot be maintained.

Paul *v.* Dod.

In my opinion, the complainant's bill should be dismissed, with costs.

*Mr. De Witt Van Buskirk* and *Mr. R. Wayne Parker*, for the appellant.

*Mr. W. D. Edwards* and *Mr. Chas. W. Fuller*, for the respondent.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the advisory master.